## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and SOCIEDAD NACIONAL DE GALAPAGOS C.A., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 25-00029 |

## COMPLAINT

Plaintiffs, Industrial Pesquera Santa Priscila S.A. ("Santa Priscila") and Sociedad Nacional De Galápagos, C.A. ("SONGA") (collectively the "Ecuadorian Respondents"), hereby bring this action by and through their attorneys, and allege and state the following:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiffs bring this Complaint to contest certain aspects of the final affirmative material injury determination of the United States International Trade Commission ("Commission") in its countervailing duty investigation of frozen warmwater shrimp from Ecuador, India, Indonesia, and Vietnam. *See Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024) ("*Final Det. Notice*"). The basis for the Commission's final determination is contained in *Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam*, Inv. Nos. 701-TA-699-700 and 702 and 731-TA-1660 (Final), USITC Pub. No. 5566 (December 2024) ("*Final Determination*").

1

## THE PARTIES

2. Plaintiffs are producers and exporters of frozen warmwater shrimp from Ecuador that participated fully in the Commission's investigation.

3. Defendant is the United States, acting by and through the United States International Trade Commission.

## JURISDICTION

4. The Court has jurisdiction over this action under 28 U.S.C. § 1581(c) because this action was commenced under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i).

## STANDING

5. As foreign producers and exporters of the subject merchandise that fully participated in the Commission's investigation, the Plaintiffs constitute interested parties under 19 U.S.C. § 1677(9)(A) and 19 U.S.C. § 1516a(f)(3). They have standing to commence this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

6. Plaintiffs commenced this action by filing a Summons on January 24, 2025, which was within 30 days after the Department of Commerce published its countervailing duty order. *See Frozen Warmwater Shrimp from Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 89 Fed, Reg, 104,982 (Dec. 26, 2024). Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

7. Following receipt of a petition filed by the American Shrimp Processors Association ("ASPA") with the Commission and the Department of Commerce on October 25,

2023, the Commission published its notice of institution of investigations for frozen warmwater shrimp from Ecuador, India, Indonesia, and Vietnam on October 31, 2023.  *See Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 88 Fed. Reg. 74,511, Oct 31, 2023.

8. On November 15, 2023, the Commission held its preliminary phase staff conference via videoconference and submissions of written testimony.  The Ecuadorian Respondents, joined by the Seafood Exporters Association of India, submitted their Post-Conference Brief on November 20, 2023.

9. In that Brief, the Ecuadorian Respondents claimed, among other things, that "{d}iesel fuel price increases could constitute the sole or primary cause of any decline in shrimper profitability."[1]  Post-Conf. Br. at 9.  The Ecuadorian Respondents then described the undisputed no. 2 diesel fuel price increases that shrimpers had incurred since the start of the preliminary phase period of investigation, which rose from $3.079 per gallon in January 2020 to over $5.00 per gallon in seven months of 2022.  *Id.* at 9-10 and attached **Exhibit 2**.  Then, the Ecuadorian Respondents provided a hypothetical example, based on a shrimper's testimony at a sunset review hearing held earlier in 2023 that, due to the fuel cost increases, "that shrimper would today have to pay an extra $50,000 for every {fishing} trip that he took."  *Id.* at 10.

10. The Ecuadorian Respondents further stated that "{t}his type of information {(i.e., information concerning fuel cost increases)}, would have allowed the Commission to calculate the extra fuel expense that a shrimper would have incurred on an average trip during the POI."  *Id.*  The Ecuadorian Respondents also stated that:

---

[1] The term "shrimper" is the commonly used term for shrimp fishermen.

> the record fails to investigate the impact on . . . shrimper profitability with respect to concededly higher fuel costs. . . . It was not enough to simply ask . . . shrimpers if they have been affected by these significant economic factors. It could well be that, if they had been required to quantify their impact, the conclusion would be that subject imports had an insignificant impact on profitability compared to all the other headwinds that the domestic industry has faced.

*Id.* at 14. Thus, the preliminary phase record contains no evidence concerning the impact of diesel fuel price increases on shrimper profitability.

11. On December 14, 2023, the Commission published the notice of its affirmative preliminary determination. *See Frozen Warmwater Shrimp From Ecuador India, Indonesia and Vietnam*, 88 Fed. Reg. 86,677; *see also Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam*, Inv. Nos. 701-TA-699-702 and 731-TA-1659-1660 (Preliminary), USITC Pub. No. 5482 (December 2023). In the notice of its preliminary determination, the Commission found, among other things, "a reasonable indication that an industry in the United States is materially injured by reason of imports of . . . imports of the subject merchandise from Ecuador, India, Indonesia, and Vietnam that are alleged to be subsidized by the governments of Ecuador, India, Indonesia, and Vietnam." 88 Fed. Reg. at 86,677.

12. The Commission's preliminary determination did not address the request of the Ecuadorian Respondents that the Commission investigate the specific impact of diesel fuel increases on each shrimper.

13. On January 26, 2024, the Commission transmitted draft final phase questionnaires to the parties and requested comment. *See* Letter from Nannette Christ, Director, United States International Trade Commission. Included in this draft at question no. III-1 was a financial statement that required each shrimper to report its total "fuel and oil" operating expenses for each of the five periods comprising the period of investigation.

14. The Ecuadorian Respondents timely filed their comments on the draft questionnaires on March 4, 2024. *See* Ecuadorian Respondents' Comments on Draft Final Phase Questionnaires. To this financial statement, the Ecuadorian Respondents requested that each responding shrimp fisherman be asked to provide the "Number of gallons of fuel and oil purchased" during each of the five periods comprising the Commission's "period of investigation." The purpose of this question was to allow the Commission and all Respondents to determine "the extent to which the enormous increase in diesel fuel prices during the POI caused shrimp fishermen to incur material injury and reduced days at sea." Ecuadorian Respondents' Comments at 9. This information was readily available to every shrimper, and, therefore, did not impose any additional reporting burden. Nevertheless, the Commission denied this simple request without explanation.

15. The parties filed Prehearing Briefs on October 15, 2024. The Ecuadorian Respondents contended in their brief that the Commission had unlawfully failed to ask shrimp fishermen to report the volume of diesel fuel that they purchased during the period of investigation. Moreover, had the Commission done so, it would have obtained evidence that confirmed that the diesel fuel cost increases that shrimp fishermen incurred in both 2022 and 2023 were solely responsible for deterioration in their financial condition that they incurred in those two years compared to 2021, when they were highly profitable. Preh. Hearing Br. at 5-10.

16. Shrimp fishermen constitute a significant portion of the entire domestic industry. The Commission received 388 usable questionnaire responses from shrimpers. However, without requesting information evidence from each shrimper concerning the impact of diesel fuel cost increases on its financial condition, the Commission, as a matter of law, could not find that the domestic industry, "as a whole" had suffered material injury from unfairly traded imports, as

required by 19 U.S.C. § 1677(4)(A). Preh. Hearing Br. at 10.  The Commission's *Final Determination* did not challenge the accuracy of the Ecuadorian Respondents' contention that the Commission could not reach an affirmative final determination without first finding that the shrimp fishermen segment of the domestic industry had suffered material injury during the POI.

17. The Commission held a hearing on October 22, 2024, and Post-Hearing Briefs were filed on October 29, 2024.  The Ecuadorian Respondents once again contended that any injury suffered by shrimp fishermen was solely due to the 55% increase in the cost of diesel fuel between 2021 and 2022 and the 29% fuel cost increase between 2021 and 2023.

18. However, lacking the evidence that the Commission had a legal obligation to obtain from the shrimpers, the Ecuadorian Respondents nevertheless submitted an analysis in their Post-Hearing Brief (at 1-4) that demonstrated, among other things, that:

> even if domestic shrimp fishermen had replicated both their revenues and expenses in 2022 that they reported in 2021, the 55% increase in the diesel fuel cost would have turned a significant operating profit into an even more substantial operating loss.  In other words, it is the diesel fuel cost increase that solely generates this operating loss because we have held constant in 2022 the very profitable operating results that they reported for 2021.

Ecuadorian Respondents provided the same analysis for 2023 versus 2021.  *Id.* at 2.  The Commission did not address these allegations in its final determination.  Nor did it obtain any diesel fuel-related information from shrimpers for the last three months of the POI, which was January-March 2024.

19. The Commission could not reach an affirmative final material injury determination because, without evidence that the shrimp fishermen segment of the domestic industry had been materially injured, the Commission could not, as a matter of law, find that the domestic industry "as a whole" had been materially injured.

20. The basis for the Commission's final determination is contained in the *Final Determination*. The Commission rejected the Ecuadorian Respondents' request for one line item to be added to the financial statement contained in the Shrimp Fishermens' questionnaire on the ground that "the Commission collected sufficient data to analyze the issue." *Id.* at 88. Moreover, "Ecuadorian Respondents were able to present their principal argument on their posthearing brief regarding diesel fuel costs based on the record data that the Commission presented in the prehearing report." *Id.* These findings lacked substantial evidentiary support and were contrary to law.

## STATEMENT OF CLAIMS

### COUNT 1

21. Plaintiffs hereby reallege and incorporate paragraphs 1 through 20.

22. The Commission's finding that the domestic industry was materially injured by reason of subsidized subject imports from Ecuador was not supported by substantial evidence and was otherwise not in accordance with law.

### COUNT 2

23. Plaintiffs hereby reallege and incorporate paragraphs 1 through 22.

24. The Commission's finding that diesel fuel cost increases were not the sole cause of any injury suffered by shrimp fishermen was not supported by substantial evidence and was otherwise not in accordance with law.

### COUNT 3

25. Plaintiffs hereby reallege and incorporate paragraphs 1 through 24.

26. The Commission's failure to address the Plaintiffs' evidence showing that diesel fuel cost increases were the sole cause of any injury suffered by shrimp fishermen rendered the

Commission's causation finding that the shrimp industry in the United States was materially injured "by reason of" subject imports and the subsidiary findings on which this conclusion rested were not supported by substantial evidence and otherwise not in accordance with law.

### **REQUEST FOR JUDGMENT AND RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court:

1) Hold that the Commission's *Final Determination* in the material injury investigation of frozen warmwater shrimp from Ecuador, India, Indonesia, and Vietnam was not supported by substantial evidence and was not otherwise in accordance with law; and

2) Remand the *Final Determination* to the Commission for disposition in accordance with the Court's opinion; and

3) Grant such other relief as the Court may deem just and proper.

                                                          Respectfully submitted,

                                                          /s/ Warren E. Connelly
                                                          Jarrod M. Goldfeder
                                                          Kenneth N. Hammer

                                                          TRADE PACIFIC PLLC
                                                          700 Pennsylvania Avenue, SE
                                                          Suite 500
                                                          Washington D.C. 20003
                                                          Tel: (202) 223-3760
                                                          wconnelly@tradepacificlaw.com

                                                          *Counsel to Plaintiffs Industrial Pesquera*
                                                          *Santa Priscila S.A. and Sociedad Nacional*
                                                          *De Galapagos C.A.*

Dated: February 18, 2025