**Slip Op. 26-105**

**UNITED STATES**
**COURT OF INTERNATIONAL TRADE**

---

**Court No. 25-00029**

---

INDUSTRIAL PESQUERA SANTA PRISCILA, S.A.,
and
SOCIEDAD NACIONAL DE GALAPAGOS, C.A.,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

AD HOC SHRIMP TRADE ACTION COMMITTEE
and
AMERICAN SHRIMP PROCESSORS
ASSOCIATION,

*Defendant-Intervenors*.

---

Before: M. Miller Baker, Judge

# OPINION

[Sustaining the International Trade Commission's affirmative material-injury determination.]

Dated: September 4, 2026

*Warren E. Connelly*, *Jarrod M. Goldfeder*, and *Kenneth N. Hammer*, Trade Pacific PLLC, Washington, DC, on the briefs for Plaintiffs.

*Margaret D. Macdonald*, General Counsel; *Karl von Schriltz*, Assistant General Counsel for Litigation; and *John D. Henderson*, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, Washington, DC, on the brief for Defendant.

*Nathaniel Maandig Rickard*, *Zachary J. Walker*, and *Anjelika D. Jani*, Picard Kentz & Rowe LLP, Washington, DC, on the brief for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

*Roger B. Schagrin*, *Elizabeth J. Drake*, and *Nicholas C. Phillips*, Schagrin Associates, Washington, DC, on the brief for Defendant-Intervenor American Shrimp Processors Association.

*Baker*, Judge: Two Ecuadorian exporters challenge the International Trade Commission's finding that the domestic shrimp business suffered material injury from cheap imports subsidized by foreign governments. They contend that the record shows that rising fuel costs, not foreign competition, is what hurt U.S. fishermen. For the reasons stated below, the court sustains the agency's determination.

I

To combat unfair trade practices, the Tariff Act of 1930, as amended, provides a mechanism for levying remedial countervailing duties on imported products subsidized by foreign governments. 19 U.S.C. § 1671(a). Before issuing such relief, the statute requires the Commission to find that a domestic industry is "materially injured . . . by reason of imports of that merchandise." *Id.*

"The term 'material injury' means harm which is not inconsequential, immaterial, or unimportant." *Id.* § 1677(7)(A). The statute directs the Commission to consider the volume of imports of subject merchandise; the effect those imports have on U.S. pricing for domestic like products; and the impact of such imports on U.S. producers of domestic like products. *Id.* § 1677(7)(B)(i)(I)–(III). For each of those three factors, the statute enumerates corresponding criteria the agency must also examine. *Id.* § 1677(7)(C)(i)–(iii).

The statutory command that the Commission consider whether material injury is "by reason of imports," *id.* § 1677(7)(B)(ii), "requires, at the least, but-for causation." *Changzhou Trina Solar Energy Co. v. U.S. Int'l Trade Comm'n*, 879 F.3d 1377, 1381–82 (Fed. Cir. 2018). That means they must be a "substantial factor" in causing the harm. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003).

Thus, the Commission need not "isolate the injury caused by unfair imports nor demonstrate that [they] are the principal cause of injury." *Swiff-Train Co. v. United States*, 793 F.3d 1355, 1363 (Fed. Cir. 2015) (cleaned up). Rather, its task is to "ensure that it is not attributing injury from other sources to the subject imports." *Trina*, 879 F.3d at 1382. The key is that "*how* the standard is best applied in particular circumstances may vary with the facts." *Id.* at 1383 (emphasis in original). It is "[t]he substance of the Commission's analysis, not the specific formulation employed, [that] determines whether [it] has adequately answered the question." *Id.*

II

This is one of a trilogy of cases in which foreign plaintiffs challenge the Commission's finding that subsidized exports from Ecuador, India, and Vietnam materially injured the domestic shrimp industry.[1] *See* 89 Fed. Reg. 102,163, Appx001354. The period of investigation was January 1, 2021, to March 31, 2024. *Id.*

A U.S. trade group, the American Shrimp Processing Association, filed the agency petitions in 2023, supported by two other domestic trade associations, the Ad Hoc Shrimp Trade Action Committee and the U.S. Shrimpers Coalition. Appx001265. The Commission received evidence and briefing from the parties before it. Appx001265–001268. It then found that imports inflicted material harm on American fishermen. Appx001265–001353.

III

Invoking subject-matter jurisdiction conferred by 28 U.S.C. § 1581(c), two Ecuadorian producers[2] filed this suit to challenge the Commission's material-injury determination. They seek relief under 19 U.S.C. § 1516a(a)(2)(B)(i). Two domestic industry petitioners[3] intervened to defend the agency's decision. The

---

[1] The Commission "defined a single domestic industry consisting of all domestic harvesters of fresh warmwater shrimp and processors of frozen warmwater shrimp." Appx001287.

[2] Industrial Pesquera Santa Priscila, S.A., and Sociedad Nacional de Galapagos, C.A.

[3] The Association and the Committee.

plaintiffs' motion for judgment on the agency record is fully briefed and ripe for decision.

In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The question is not whether the court would have reached the same decision on the same record. Rather, it is whether the administrative record as a whole permits the Commission's conclusion:

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 382 (Fed. Cir. 1983) (if agency makes a choice between "two fairly conflicting views," the court may not substitute its judgment even if its view would have been different "had the matter been before it *de novo*") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The court also reviews to ensure the agency engaged in "reasoned decisionmaking," meaning its

result must be "within the scope" of its authority and "the process" it uses to reach that outcome "must be logical and rational." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). The agency must "examine the relevant data and articulate a satisfactory explanation . . . including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). But courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.*

IV

The Ecuadorian plaintiffs frame their case as raising "a single challenge," which is whether substantial evidence supports the Commission's finding that imports materially injured U.S. shrimp fishermen. ECF 36, at 2. They present two questions.

First, they ask whether the agency abused its discretion "by failing to request that domestic shrimp fishermen provide the volume of the diesel fuel that they purchased during each of the five periods comprising the period of investigation." *Id.* Second, in an issue framed to presuppose the answer, they question whether substantial evidence supported the Commission's conclusion that the U.S fishermen suffered material injury from imported shrimp "despite the fact that diesel fuel price increases during the period of investigation were the sole cause of any deterioration in their financial condition during the period of investigation." *Id.*

A

The Ecuadorian plaintiffs argue that the Commission should have required that U.S. fishermen report the quantity of their diesel fuel purchases. *Id.* at 28. They assert that they "repeatedly asked the agency to request this single piece of information from the shrimpers" but that it "brushed off" their requests. *Id.* at 28–29. They contend that substantial evidence does not support the agency's explanations. And they assert that the Commission "was biased against" them. *Id.* at 31.

The court begins with the last point because if the plaintiffs are correct, that alone would require a remand. The charge of "bias" is effectively a claim that the Commission acted in bad faith. But an administrative agency is entitled to the presumption of regularity, which "supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties." *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1351 (Fed. Cir. 2006) (cleaned up) (quoting *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002)); *cf. Am-Pro Prot. Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (discussing presumption that government officials act in good faith and requiring clear and convincing evidence to show otherwise).

The Ecuadorian plaintiffs have offered no evidence—much less clear and convincing evidence—of bias or bad faith. Perhaps recognizing that omission, in their reply brief they back away from the "bias"

charge and instead argue that because the Commission "made *eight* changes to the fishermen's questionnaire" based on the domestic industry's comments, "while denying the single request posed by the Ecuadorian Respondents," its action "was arbitrary, capricious, and an abuse of discretion." ECF 50, at 14–15 (emphasis in original). But they offer no citation to any authority requiring the agency to make changes proposed by other parties simply because it accepts one party's suggestions. And while they also argue that their proposal to request diesel purchase volumes was unopposed, *see* ECF 36-2, at 31, they have likewise offered no authority suggesting that lack of opposition obligates an agency to include a proposed question.

While the Federal Circuit has observed that "it is clear that all information that is 'accessible or may be obtained,' from whatever its source may be, must be reasonably sought by the Commission," *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1373 (Fed. Cir. 2002) (quoting *Budd Co. Ry. Div. v. United States*, 507 F. Supp. 997, 1003–04 (CIT 1980)), that court has also emphasized that "[t]he Commission does indeed enjoy discretion to conduct its investigation and gather data *it deems relevant*" as long as it makes "active, reasonable efforts to obtain relevant data," *Full Member Subgrp. of Am. Inst. of Steel Constr., LLC v. United States*, 81 F.4th 1242, 1257 (Fed. Cir. 2023) (emphasis added).

The words "it deems relevant" are crucial. "There is no statutorily designated minimum standard that requires a particular degree of thoroughness in the Commission's investigation." *Id.* (brackets omitted)

(quoting *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n*, 26 F. Supp. 3d 1338, 1348 (CIT 2014)). Rather, "[o]nce the Commission satisfies its obligation to conduct investigative activities under 19 C.F.R. § 207.20(b), a decision not to collect additional information does not alone render [its] final determination unsupported by substantial evidence."[4] *Id.* (footnote omitted).

"As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Elkem Metals Co. v. United States*, 276 F. Supp. 2d 1296, 1301 (CIT 2003) (quoting *Ceramica Regiomontana, S.A. v. United States*, 636 F. Supp. 961, 966 (CIT 1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987)). It is the agency's responsibility to seek comments on "the best method" for obtaining the information it needs, and it has the discretion to determine that additional evidence proposed by a party "would not provide better clarity." *Full Member Subgrp.*, 81 F.4th at 1258.

For its part, the Commission observed that diesel prices in the Gulf Coast region initially increased during the first 18 months of the period of investigation, then decreased for the next 12 months, and subse-

---

[4] As relevant here, the regulation requires that, if the Commission preliminarily finds material injury, the agency circulate draft questionnaires to parties to the investigation for comment. 19 C.F.R. § 207.20(b).

quently fluctuated, with an overall increase over the entire period. Appx001314. It also found that if—as the Ecuadorian plaintiffs contend—"the fuel and oil cost [were] the most important driver of any injury to the fishermen, then there should have been a major improvement in their financial condition in 2023 given the sharp decline in their fuel and oil cost." Appx001348. Instead, they suffered operating losses. *Id.* The court can reasonably discern from the agency's explanation that an analysis of the specific number of gallons of diesel fuel the fishermen purchased would have made no difference in the conclusion. *Cf. State Farm*, 463 U.S. at 43. That is sufficient reason to sustain the Commission's decision not to ask for that information.[5]

The Ecuadorian plaintiffs also disagree with the agency's finding, *see* Appx001351, that they were able to present their argument based on the data in the record. They call that statement "nonsense," noting that their administrative briefing "continued to criticize

---

[5] The Ecuadorian plaintiffs contend that the agency's conclusion that reporting the number of gallons would be burdensome is "specious." ECF 50, at 10. They argue that "[i]t was impossible for fishermen to report their total annual or quarterly expenditures on diesel without first compiling the volume and per gallon price listed on each individual invoice that they had to pay when they filled their fuel tanks." *Id.* at 11. But that theory is speculation because it assumes, without evidence, that the fishermen necessarily reviewed each invoice—rather than, for example, using an annual or quarterly aggregate amount from accounting software—to report the cost figures.

the Commission's failure to request the diesel fuel volumes that shrimpers purchased." ECF 36-2, at 32.

But they did effectively present their argument. In their agency posthearing brief, they stated that "[o]ur analysis above does exactly what the petitioners said we should do, i.e., we 'figured out' the prices of diesel fuel during the [period of investigation], and we then calculated the impact of the significant price increases in 2022 and 2023 on shrimper profitability." Appx045163.

"Of course," they also said, "our analysis *could have been further refined* had the Commission required each shrimp fisherman to report the diesel fuel gallons that [he] purchased during the" period of investigation. *Id.* (emphasis added). And in their reply brief before this court, they acknowledge that they "were able to isolate the effect of soaring diesel prices" as part of their analysis. ECF 50, at 23. That amounts to an admission that the agency correctly found that they were able to present their argument based on the existing record. Viewed differently, any additional evidence would have been cumulative. An agency decision to exclude, or not to collect, cumulative evidence is not an abuse of discretion. *Veneziano v. Dep't of Energy*, 189 F.3d 1363, 1369 (Fed. Cir. 1999).

The court therefore sustains the Commission's decision not to ask the domestic shrimp fishermen to report the quantity of diesel fuel they bought during the period of investigation.

B

The Commission found that imports undersold U.S. shrimp in most cases during the period of investigation. Appx001317. And most buyers who opted for the former said the lower price was their primary reason. Appx001318.

Consequently, "U.S. fishermen experienced a sharp decline in the prices they received for the shrimp they harvested, with their net sales average unit value declining by 42.6 percent from 2021 to 2023, falling from $3.66 per pound in 2021 to $3.05 per pound in 2022 and $2.10 per pound in 2023." Appx001326. "As U.S. processors had to lower their prices to compete with subject imports in the U.S. market, they in turn were forced to lower the prices they could pay fishermen, and the fishermen's prices therefore were also depressed by low-priced subject import competition." Appx001329. The lower prices "reduced their incentive to shrimp, which in turn resulted in fewer fishing days, fewer boats in operation, fewer [production and related workers], and lower output." Appx001339.

In considering the Ecuadorian plaintiffs' argument that fuel costs were the culprit rather than imports, the Commission observed that from 2021 to 2022, the fishermen's fuel and oil expenses increased 8.5 percent (from $37.1 million to $40.3 million), but then the following year saw a 27.2-percent decrease (to $29.3 million), "for an overall decrease of 21.1 percent between 2021 and 2023." Appx001347–001348 & n.327. Yet rather than experiencing an improvement in their financial situation—which the agency observed would be

the expected outcome if "the fuel and oil cost [were] the most important driver of any injury to the fishermen"—they experienced an operating loss in 2023. Appx001348.

The Ecuadorian plaintiffs do not challenge the agency's findings about underselling or the effects of lower prices. Instead, they accuse the Commission of "irrationally ignor[ing] the undisputed evidence concerning diesel prices." ECF 36-2, at 25.

They correctly observe that the record "showed that diesel prices substantially exceeded $4.00 per gallon in 10 months of 2022 and substantially exceeded $3.50 per gallon in 11 months of 2023." *Id.* (citing Appx001572). But the agency's finding of lower *overall* diesel *expenses* in 2023 (compared to 2021) is not inconsistent with per-gallon prices being higher during that year because it explained that the lower prices resulting from subject imports curtailed both the number of fishing days and the number of boats in operation from 2021 to 2023. Appx001333–001334. It's self-evident that fewer days underway would reduce fuel costs.

The plaintiffs also argue that the Commission "unlawfully failed to respond" to their "uncontradicted analyses" of diesel fuel prices. ECF 36-2, at 35. But the agency did address their argument.

It observed that if the Ecuadorian plaintiffs were correct that fuel costs inflicted any injury, the fishermen would have seen improved financial performance in 2023 due to the lower amounts they spent on fuel

that year. Appx001348. But, it noted, they suffered an operating loss and saw their worst operating ratio of the entire period of investigation "as their net sales [average unit value] declined by a much greater amount than the unit value of their fuel and oil expenses. Thus, the fishermen's injury was not caused by their fuel and oil expenses, but rather by their falling prices as a result of subject imports." *Id.* (footnotes omitted). That analysis is certainly terse, but it does respond to the plaintiffs' contention that diesel fuel costs were the culprit. *See Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1362 (Fed. Cir. 2023) (explaining that agency's written decision need not "address every argument raised by a party or explain every possible reason supporting its conclusion" as long as the court can "determine that [it] at least considered counterarguments to its position") (cleaned up).

The Commission viewed the record as showing that imports, not fuel prices, caused the injury to U.S. fishermen and provided a rational explanation for that conclusion. The Ecuadorian plaintiffs see things differently. But that they can "point to evidence of record which detracts from the evidence which supports the Commission's decision and can hypothesize a reasonable basis for a contrary determination is neither surprising nor persuasive." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).

* * *

For the foregoing reasons, the court sustains the Commission's material-injury determination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated: September 4, 2026 /s/ *M. Miller Baker*
New York, NY Judge